## DELGADO ET AL., Complainants,

### v.

## BERNAL ESTATE ET AL., Dfts.

----

San Juan, Law, No. 1006.

DEMURRER AS TO LIMITATIONS, ETC.

Uncertainty—New Complaint.

1. If a complaint contains blanks it is uncertain and a demurrer will lie. Where there have been separate amendments they should all be embraced in one amended complaint.

Possession and Damages—Several Defendants.

2. With a suit for possession of land may be coupled a claim of damages for its detention. The question of joinder of two defendants is not raised by demurrer that one defendant has nothing to do with damages against another.

Delgado v. Bernal Estate.

Lease—Majority of Co-owners.

    3. Under § 405 of the Civil Code the management of land may be directed by a majority of the owners in common, but this does not apply to its sale, nor does it apply to a case of a plaintiff who is not recognized by the others as a co-owner.

Partition—Suit for Undivided Interest.

    4. An heir cannot sue by himself until an adjudication of the heritage and due partition proceedings. But this does not forbid a co-owner from suing other co-owners denying his interest.

Dominio Title—Recorded Deed.

    5. The fact that the defendant has a recorded deed does not prevent the plaintiff from suing him and showing a better title. The act of the registrar in admitting a deed to record *ex parte* will not bind other parties in interest.

Ejectment—Prior Possession.

    6. It is not necessary that the complaint should allege prior possession in the plaintiff. If the plaintiff has a right to possession, he may sue for it without having previously enjoyed the exercise of that right.

Prescription—Uncertainty.

    7. Where it is not clear that the complaint is subject to the defects set up as to prescription, the demurrer will be overruled and parties put to plea or proof.

Misjoinder—Different Remedies.

    8. If a suit has several sets of defendants and several sets of remedies sought against them, there is no certainty and the jury will be confused. The plaintiff must, upon demurrer, strike out sufficient parties to leave practically a claim of remedy against all who are left in the case.

Federal Practice—Ejectment and Cancelation.

    9. In Federal practice ejectment and cancelation are separate remedies and cannot be joined in one suit, regardless of what may be the practice in the local courts. Practice designed for local courts without juries cannot be followed on the law side of the Federal court, which has juries.

Will—Law Governing.

    10. The law governing the vesting of rights under a will is that which is in force at the time of the death of the testator.

Reciprocal, Conditional Fideicommissary Substitution—Vesting.

    11. Rules of construction are designed to ascertain the testator's

Delgado v. Bernal Estate.

intention when it is not definitely stated, but if it appears that the testator designed his devisees to profit by accretion from each other in case of death without issue, there is no need to consider what would be the rule under other circumstances.

Ejectment—Cancelation.

12. While it may be necessary to a complete remedy that a party not only recover possession, but cancel opposing titles, it is not necessary under the Federal procedure that both proceedings be effected in one suit.

Opinion filed April 20, 1915.

Statement of Facts.

The original complaint in this case was filed by Luis Delgado et al. against the Guanica Central, on December 22, 1913, claiming an undivided one-sixth interest in a certain sugar plantation called Fraternidad in the barrio of Guanica and municipality of Yauco, containing an area of 1378.30 cuerdas. An amended complaint bringing in the Bernal estate and Santa Rita, as additional defendants, was filed December 30, 1913. A further amended complaint filed January 27, 1914, omits the Guanica Central and Santa Rita as defendants, and adds as intervening defendants Concepción Ramirez and Crescente Lopez. During these proceedings there has been also some change of plaintiffs. To the amended complaint certain demurrers were filed, and on February 13, 1915, an amendment was filed to the amended complaint making the Enseñada estate a defendant. New demurrers have been filed to the amendment, the old demurrers refiled, and the matter now comes up as upon demurrer to the complaint as last amended. The demurrers to be considered are those by the Bernal and Enseñada estates.

Delgado v. Bernal Estate.

and those by defendants Ramirez and Lopez. They have some grounds in common, but as to others they are separate.

*Messrs. N. B. K. Pettingill, B. J. Horton,* and *Paul Charlton* for plaintiff.

*Mr. F. E. Neagle* for Bernal estate and *Mr. José A. Poventud* for Ramirez and Lopez.

HAMILTON, Judge, delivered the following opinion:

1. One of the grounds of demurrer sets up that the complaint is uncertain. The demurrer must be upheld in this respect. In the complaint are different blanks which should be filled, and there is uncertainty as to several allegations. It may well be that it is difficult to make the complaint more certain, but, nevertheless, the difficulty must be met if the suit is to continue. The defendant is entitled to know what he is to answer. The court will direct in this connection, that, in amending to meet this demurrer, the plaintiff will file a new complaint combining in one all allegations upon which he based his cause of action, which shall take the place of every prior complaint or amendment. It is difficult to handle a complaint made up of an original paper and several amendments.

As an assistance in rewriting the complaint it would seem that the points raised by demurrer should be determined. They will, therefore, be taken up in order, and first those of the defendants Bernal and Enseñada estates.

2. It is insisted that there has been an improper joinder of

causes of action in that the damages claimed for detention by Bernal estate do not affect one of the defendants, to wit, the Enseñada estate. This case is, of course, to be tried by a jury, and the object of pleading, both at common law and under the Codes, as in Porto Rico, is to arrive at a definite issue to be determined by a jury of twelve men. It is confusing to have several issues tried at the same time before such an untrained body of men, and what is gained in speed and costs is apt to be lost in the unsatisfactory nature of verdicts. So far as a court can control issues, they will be few and certain in each case. There is, however, a limit to the power as well as to the wish of the court in this respect. Perhaps universally with a suit for possession of land may be coupled the finding of damages for the detention of the land. The two are so closely connected that they are but two sides of the same issue, and with proper directions a jury should not have any difficulty in finding a verdict for the land and mesne profits on the one side, or finding for the defendant on both issues on the other. The wording of the demurrer is that one defendant has nothing to do with the damages found against the other, but this relates to an ancillary point. If the two defendants can be joined at all,—a point not raised by the demurrer,—then the plaintiff can have full relief against each of them. The defect, if it exists, is not in the direction pointed out by the demurrer. The Code of Civil Procedure, § 104, provides:

"The plaintiff may unite several causes of action in the same complaint, where they all arise out of:

"1. Contracts, express or implied.

"2. Claims to recover specific real property, with or with-

out damages for the withholding thereof, or for waste committed thereon, and the rents and profits of the same.

. . . . . . . . . . . . . . . . . .

"7. Injuries to property.

"8. The causes of action so united must all belong to one only of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated. . . ."

The demurrer accordingly is overruled.

3. It is further alleged that it appears the property described was leased by resolution of the majority of the co-owners in accordance with § 405 of the Civil Code, which reads as follows:

"The resolution of the majority of the participants as to the management and better enjoyment of the thing held in common shall be binding (on all).

"A majority shall not be deemed to exist except when the resolution has been taken by the participants representing a majority of the interests which constitute the object of the common ownership.

"If no majority results, or if the resolution of the majority is seriously prejudicial to the persons interested in the thing held in common, the district court, on petition of any of the parties, shall decree what may be proper, including the appointment of an administrator.

"When a part of the thing belongs privately to one or to several of the part owners, and the remainder in common, the preceding provisions shall only apply to the part held in common."

This provision of law covers the management and better en-

joyment of the thing held in common, but not its sale or disposition. It does not appear from the amended complaint that there has been a formal resolution of the majority of the participants. The action at bar is brought by and on behalf of the owners of an undivided twelfth interest, but this by itself would not be conclusive. Paragraph 4 of the amended complaint of January 27, 1914, alleges that the defendants, or some or one of them, claiming to be the owners, entered into a contract of lease with the Santa Rita estate, and that the Santa Rita estate transferred the lease to the defendant Bernal estate. In the first place it is not clear that a majority of the owners acted in this lease, and in the second it is clear that what was done was not as a majority of owners recognizing the plaintiff as a minority, but as absolute owners not recognizing the plaintiff at all. If the lease comes within the purview of § 405, it comes within the clause authorizing courts to "decree what may be proper" in the particular case. This ground of demurrer is therefore overruled.

4. The point is raised that a cotenant cannot sue the other cotenants for an undivided interest in land, in that it is a necessary prerequisite that the land be divided and the plaintiff have a definite tract set off to him. This seems to be true, however, only in cases of suit by an heir against a third party. Where an ancestor dies leaving land an heir cannot sue until adjudication of the heritage and partition proceedings. These proceedings confer on each heir the exclusive ownership of the property so adjudicated, the corporeal possession of the property of the heritage. 5 Manresa, 338. "A division legally made confers upon each heir the exclusive ownership of the property which may have been awarded to him." Porto Rico

Civil Code, § 1035. Fernández v. Velázquez, 17 P. R. R. 716, 721; Velilla v. Pizá, 17 P. R. R. 1069, 1074, 1075; Cruz v. Ortiz, 17 P. R. R. 1134; Davila v. Davila, 18 P. R. R. 112.

The case at bar, however, is not one of a suit by a coheir before division. It is a suit by one claiming an undivided interest against other parties who deny that he has an interest of any kind. No law has been cited showing that a cotenant has no rights until some court has made a partition of the property. This would be saying that there could be no such thing as a cotenancy. The contrary is true. In the Spanish law, perhaps more than in any other system of jurisprudence, there flourishes joint ownership and joint handling of property. While a cotenant cannot oust the other cotenants, the converse is also true, and there seems to be no reason why a cotenant should not enforce his claim to be a cotenant against others who deny his rights.

This seems also to be provided for by statute. The Code of Civil Procedure of Porto Rico, in § 68, declares as follows: "All persons holding a common interest in property, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party or parties."

This seems to run expressly against a cotenant, and § 282 is even broader. It is as follows: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claims."

To the same effect are decisions of the local supreme court. In Busigó v. Jordán, 20 P. R. R. 278, it is held that ejectment

Delgado v. Bernal Estate.

or reivindicacion lies for the recovery of an undivided interest in an estate. The demurrer is overruled as to this ground.

5. The demurrer further alleges that it does not appear the plaintiffs have a dominio title to the property. This, however, is not clear. The plaintiffs claim that they are the owners of an undivided twelfth interest in the plantation called Fraternidad, having certain given boundaries, by intestate inheritance from their father, and he by testate inheritance through the father's mother, all of which appeared upon the registries of property and other official records. The fact that the defendants also have a registered claim to the property, if it be a fact, does not prevent the plaintiffs from suing. Otherwise the record of a deed, which the registrar may erroneously record, might bar the rightful owner from suing at all. So far as real property is concerned, there would then be no need of any courts. The act of the registrar would control. This is not the law. No official can *ex parte* perform an act which will bind the owners of property. They can always have their day in court. The record of an instrument which is null does not validate it, and an invalid deed may be avoided by the courts. Fernández v. Veláquez, 17 P. R. R. 717.

The complainant in question sets out the right of the plaintiff, the description of the property, and alleges the possession of the defendant. Servants of Mary v. May, 17 P. R. R. 697. Formally the complaint is sufficient so far as relates to this ground of demurrer.

6. It is not necessary that the complaint should allege prior possession in the plaintiff. If this were necessary, it would mean that in some cases the plaintiff might have a perfect title and yet be unable to recover his property. The plaintiff must

Delgado v. Bernal Estate.

have the right to possession, or he cannot recover possession, but it is not necessary that he has had previous enjoyment of this right.

7. The remaining grounds of demurrer relate to the question of prescription. They allege that the cause of action has prescribed under one or other of the periods fixed in the Civil Code. They will therefore be taken up seriatim.

The period for the prescription of actions begins to run from the time when suit could have been instituted. Civil Code of Porto Rico, § 1870. The demurrer sets up several such periods. For instance, the action could, under the allegations of the complaint, have been begun in 1900 as to the Bernal estate, and against the Enseñada estate after May 6, 1907, while subdivision 1 of § 1869 of the Civil Code limits a recovery to one year. On the other hand, this suit is against a cotenant, and § 1866 of the Civil Code declares that "among coheirs, co-owners, or proprietors of adjacent estates, the action to demand the division of the inheritance of the thing held in common, or the survey of the adjacent property, does not prescribe."

It is not clear under the allegations of the complaint that § 1869 would apply, and it would seem better, therefore, to put the defendant to his plea and proof. The demurrer on this ground is overruled. But § 1866 does not take away the prescription as to rents and profits, and it would seem as if the prescription will prevent the recovery of these prior to one year before commencement of the suit against the respective parties.

"Actions to demand the fulfilment of the following obligations prescribe in five years. . . .

"2. For the payment of rents, whether derived from rural or from town property.

"3. That of any other payments which should have been made annually or in shorter periods."

A further prescription is set up of ten years under the § 1858 of the Civil Code, which reads as follows: "Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

There is no question that plaintiffs were persons present within the meaning of the statute, and none that the defendants held under a record title. The matter of bad faith, however, does not appear clearly from the complaint, and on the whole it would seem better to put the defendant to his plea and proof in this regard. This would apply also to the prescription claimed under paragraph 2 of article 23 of the mortgage law; this latter applies to third persons, and it is not clear in the allegations of the complaint that the plaintiffs were third persons within the purview of the law. They seek to allege that they are cotenants with the defendants. On the whole, it seems better to overrule the demurrer on the ground of prescription, as the same points, if material, can be raised more clearly by plea.

8. The general demurrer that the complaint does not state facts sufficient to constitute a cause of action will, under the practice of this court, not be considered. But the remaining ground alleged, relating to improper joinder of causes of action not affecting all the parties defendant, would seem to be well taken. As it stands, there are three sets of defendants and possibly three sets of remedies. The fact that the defendants are only four does not change the principle discussed above,

Delgado v. Bernal Estate.

that if claims with different remedies can be joined as to two different parties, there is no limit to the number which can be so joined. It will destroy all certainty and tend to confuse the jury. The demurrer on this ground is therefore sustained, and the plaintiff must amend by striking out sufficient parties to claim practically the same remedy against all defendants.

9. Defendants Concepción Ramirez and Crescente Lopez filed other demurrers which must be discussed, and in the first place that the complaint is defective in not making Santa Rita estate a party defendant. The ground for this demurrer is that the Bernal estate is a party in interest by virtue of its being the assignee of the lease made to the Santa Rita estate, and the cause of action virtually denies the validity of this lease. The conclusion is drawn that therefore Santa Rita estate is interested and should be made a party defendant. This is urged upon the grounds set out in Sosa v. Arzuaga, 17 P. R. R. 1042, that in an action of ejectment wherein the nullity of several deeds and cancelation of prescriptions are prayed, it is indispensable to join as defendants all persons taking part in the execution of the documents.

It may well be that this is the proper procedure under the local practice, which knows no distinction between equity and common law and has no jury in civil cases. It would, however, be impracticable in the Federal court. If the issue involves the cancelation of instruments, the suit should be for that purpose on the equity side of the Federal court. In the old common law practice in ejectment, different demises could be laid so as to prove title under previous holders in case of any break in the last links of title, but this did not apply to the defendants. The defendant must remain the same. The practice as to de-

mises merely let the plaintiff prove different phases of the title to the same land against the same defendants. It is true that the statute has allowed defendants to bring in their warrantors under their contracts to warrant and defend the title. But this is the act of the original defendant, not of the plaintiff. It would be impracticable to try such a series of issues before a jury, and the local practice on the subject, designed for courts without juries, cannot be followed on the law side in the Federal court. The demurrer on this ground, therefore, is overruled.

10. The ground of demurrer most elaborately argued is that the plaintiffs on their own showing did not inherit from their grandmother any right of action in the premises. The claim of the plaintiffs to one-twelfth interest in the estate of Fraternidad grows out of the fact that their father, Luis G. Delgado, deceased, under whom they claim, inherited from his mother, Cornelia Martinez, upon her death on July 24, 1890. The question is, Was the right of Cornelia heritable by her descendants, or did it die with her? Her right consisted in a claim under clause 13 of the will of Tomás José Ramirez de Arellano, who died April 30, 1864. This clause provides that "the remainder of my goods, rights, and actions I bequeath in the character of fideicommissum and that the other (shares) may (profit by) accretion, in case of death without sucesión legítima (issue) by equal parts, to my nieces," among whom was Cornelia Martinez. Two of the other nieces so named, to wit, Obdulia and Monserrate Ramirez, died without issue, respectively in 1898 and 1900. It will be observed, therefore, that Cornelia, under whom the plaintiffs claim, died before Obdulia and Monserrate, whose shares are claimed in the complaint.

Delgado v. Bernal Estate.

The question is raised whether these two shares went, under the will of Arellano, to Delgado, the son of Cornelia, or whether they were contingent upon Cornelia's surviving the other two nieces, Obdulia and Monserrate. There can be no question that the interest now claimed did not vest in Cornelia in her lifetime. It was certainly contingent during that period. The question is, however, Did Cornelia's son, Delgado, take her place, so that, when the two nieces died, their shares vested in him, and from him on his death passed to his two children, the plaintiffs herein?

A preliminary question is, What law governs the case? The Partidas and subsequent legislation prevailed at the time of the will and death of Arellano, while the Spanish Code, which is practically copied in the present Porto Rican Civil Code, prevailed at the time of the death of Cornelia. As all the rights in question arise from the will of Arellano, it is obvious that they must be governed by the law in force at the time of his death, that is, 1864. This is recognized by the Civil Code itself.

"Laws shall not have a retroactive effect unless they expressly so declare. In no case shall the retroactive effect of a law operate to the prejudice of rights acquired (vested) under previous legislative action." Civil Code, § 3.

"The rights originating under the legislation previous to the Code, from acts which took place while it was in force, shall be governed by the previous legislation, even though the said Code regulates them in a different manner, or does not recognize them." Temporary Provision of Civil Code, No. 1.

"Acts and contracts entered into while the former legislation was in force, and which are valid under it, shall have

all their effects according to the same, without limitation of any kind." Temporary Provision of Civil Code, No. 2.

"Rights to the inheritance of a person who died, whether testate or intestate, before the old Civil Code went into effect, shall be governed by the legislation prior to said Code." Rodriguez v. San Miguel, 4 P. R. R. 195; Torres v. Rubianes, 20 P. R. R. [316] 337 (Spanish).

"Incapacities to inherit, be they absolute or relative, shall be determined according to the laws in force at the death of testator." 12 Manresa, Commentaries on Civil Code, 924.

11. It is contended by the demurrer that the interest of. Cornelia in the devise to Obdulia and Monserrate was in the nature of a reciprocal conditional fideicommissary substitution, and so far as Cornelia was concerned amounted only to an expectancy, which never vested in her. An instance given by Escriche is as follows: "Conditional fideicommissum is that which is provided for to take effect upon the happening of a future and uncertain event foreseen by the testator, as when the latter says: 'I do hereby name and institute John as my heir, and it is my desire that, if he should die without issue, the inheritance should go over to Frank.'" Escriche, Dict. of Legis. & Jur. 703.

"Fideicommissary substitution is that in which the testator recommends the first taker (known as fiduciary) to deliver the inheritance to someone else (known as fideicommisario, or cestui que trust). If the fideicommissary substitute dies before the delivery of the inheritance, any rights of said substitute do not pass or descend to her heirs if the substitution is a conditional one." Escriche, Dict. of Legis. & Jur. 1867 ed. 1554.

Delgado v. Bernal Estate.

"When the legacy is made upon suspensive condition, the legatee does not acquire any rights to the devise unless he survives the testator, and provided he does not die before the fulfilment of the condition. If the legatee dies before the happening of the event or condition, the legacy becomes extinguished." Partida 6, Laws 7, 8, and 9, title 4, and Law 34, title 9; Escriche, Dict. Legis. & Jur. 1188.

"Supposing that a testator who died last year appointed any-one his heir, upon condition that some event should happen. While the condition is not fulfilled, there is only an expectancy to inherit; and this expectancy shall vanish if, before it becomes a vested right by the fulfilment of the condition, the legatee should die." Escriche, Dict. of Legis. & Jur. 600.

"In Roman law, and under the laws prior to the Spanish Civil Code of 1889, the fideicommissary substitute was bound to survive the fiduciary or first taker, and to possess capacity to acquire by will at the time of the delivery of the inheritance, before any rights at all accrued to such substitute or second taker." 6 Manresa, Commentaries, 145.

"If he to whom a legacy or devise is made on condition shall die before the fulfilment of the condition, the legacy shall not be valid, nor can it be claimed by the legatee's heirs." Law 34, title IX. Partida 6; 13 Scaevola, Civil Code, 327.

A devise to one of what may remain of an estate at the death of a first taker creates a mere expectancy or contingent right depending upon the condition that the first devisee died leaving a part of the estate. In such case the second devisee does not acquire and does not transmit anything to his heirs, unless he survives the first devisee. Torres v. Rubianes, 20 P. R. R. [316] 338, 347, 350 (Spanish).

Delgado v. Bernal Estate.

It is argued that such a devise is analogous to what at common law is called an executory devise. 40 Cyc. 1591, 1644. In such case of limitation of a future estate nothing vests absolutely until the future contingency occurs. Such a contingency occurs when the person to whom or the event upon upon which it is limited to take effect remains uncertain. 40 Cyc. 1649, 1650.

Such rules of construction, however, are designed to ascertain the testator's will when it is not definitely stated. It would appear that such construction in the case at bar would be doing violence to the testator's will. The testator provided that devisees should profit by accretion from each other in case of death without issue. The point as to issue would seem to apply both ways, that is to say, the share is lost upon the death of (in this case a niece) without issue, and correlatively would be gained by another niece or her issue. There is nothing which indicates an intention that the accretion is to be limited to Cornelia personally. It is true that she died before the other nieces, but also true that she left a son, Delgado, who took her place. The general rule is that property passes to a child, and, while this can be changed by will to some extent, there is no indication in the will in question of an intention to make any such change in the case at bar. If there had been any intention expressed in the will that the accretion was to be limited to the devisees named, the rule invoked as to a conditional fideicommissary substitution would apply; but no reason appears why this right, like property in general, should not descend to heirs. The demurrer on this ground, therefore, is overruled.

12. The demurrer further sets up that there must be some

proceeding to annul the defendant's title or registration, as both cannot coexist. If such cancelation cannot be secured by the present suit, it may be necessary to effect this by means of a proceeding in equity for that purpose; but, at all events, there seems to be no reason why the plaintiff cannot secure his present right, if any he has.

The other grounds of demurrer set up by Ramirez and Lopez have been substantially covered above, or are such as can be controlled by instructions and charges of court. It does not appear necessary to discuss them further at this time.

The demurrers, therefore, filed by the several defendants, are sustained in part and overruled in part as above, and the clerk will enter an order in detail conforming to the above opinion.